MARY C. KITCHEN ET AL. V. WILLIAM G. CHAPIN.

FILED MARCH 5, 1902. No. 11,316.

Commissioner's opinion, Department No. 3.

**Married Woman**: PROMISSORY NOTE: GUARANTY: LIABILITY. A married woman is liable on her guaranty of a promissory note owned by her and made payable to her order, and the purchaser of such a note is not driven to an inquiry of the purpose to which she intends to devote the proceeds of a sale thereof.

ERROR from the district court for Lancaster county. Tried below before FROST, J. *Affirmed.*

*John P. Maule* and *Morning Bros.,* for plaintiffs in error.

*John S. Kirkpatrick, contra.*

DUFFIE, C.

William G. Chapin brought this action in the district court of Lancaster county against Mary C. Kitchen and A. D. Kitchen, alleging as his cause of action that he was the owner of a promissory note for $500, made by James H. O'Neill and payable to the order of Mary C. Kitchen; that after the execution and delivery of said note, and before the maturity thereof, the said Mary C. Kitchen sold, assigned and delivered the note to him, and for that purpose the said Mary C. Kitchen and A. D. Kitchen indorsed on the back of said note the following:

"For value received, I hereby assign the within note unto William G. Chapin and hereby guarantee payment of the same and waive demand and notice of protest on same when due.    MARY C. KITCHEN,
"A. D. KITCHEN."

It is alleged that the note is due and unpaid, and judgment is asked against the defendants. Mary C. Kitchen filed the following answer: "Now comes Mary C. Kitchen and for her answer to the petition of the plaintiff says at

the time the note sued on was executed and the indorse-
ments of assignment and guaranty made, she was a mar-
ried woman, the wife of her codefendant, A. D. Kitchen,
and living with him; that previous to this time she owned
some city lots in Lincoln of uncertain value. Her said
husband was engaged in the erection of some brick build-
ings in said city and was needing money. This defendant
said to him if he could sell some of her lots she would
make a deed to the purchaser and he, her said husband,
could have the money realized from said sales to use in
the erection of the said buildings he was erecting. Later
he represented to her that he had negotiated a sale for cer-
tain lots, and asked her to execute a deed to the same to
the defendants O'Neill, which she did. Later he brought
to her the note and mortgage in suit and asked her to write
her name on the back of it so he could use it in his business,
which she did. The defendant alleges that she had no
business dealings with the plaintiff whatever, that she has
never been engaged in any trade or business and did not
get or receive any benefit or consideration for the sale of
said lots or for the execution of the deed she executed
thereto or for the transfer of said note to the plaintiff or
for said assignment and guaranty. She alleges that she
did not enter into said contract of guaranty for the pur-
pose of binding her separate estate or with reference
thereto, but only for the purpose of passing the title of
said note so her husband could get money to use in his
own business and enterprises. Wherefore she prays that
she may go hence without day and recover her costs." The
reply is a practical admission of all the facts set out in the
answer, except that she did not indorse the note for the
purpose of binding her separate estate, or with reference
thereto. The case was tried to the court without a jury,
and judgment entered for the plaintiff below, and Mrs.
Kitchen has taken error to this court.

The only question presented by the record is whether
the plaintiff in error, a married woman, is liable upon her
guaranty, under the admitted facts in this case. In order

to assist her husband in some building operation in which
he was engaged, she sold certain lots which she owned in
her own right, taking this note as a part of the purchase
price. For the purpose of negotiating the note and obtaining money thereon for her husband's use, she guaranteed payment of the note, in the form above shown. Was
this a contract relating to her separate estate, and did she
intend thereby to bind her separate. estate? In *Grand
Island Banking Co. v. Wright,* 53 Nebr., 574, Judge
NORVAL, in speaking of the liabilities of a married woman
under our enabling act, remarks (page 578) : "But this
statute does not expressly, nor by implication, enlarge a
wife's capacity to contract generally. She can buy and
sell property in her own name and upon her own account,
and enter into valid contracts with reference to her separate estate the same as if she were a *feme sole,* or as a married man may in relation to his property." It is undisputed that the note in suit was taken by Mrs. Kitchen on
a sale of her separate property, and that the note itself
was her separate property. She had the same right to
hold and collect it or sell and negotiate it that a married
man would have, and in the sale and transfer of the note
she could undoubtedly bind herself by any contract of indorsement or guaranty that is usual or customary in the
sale and transfer of such instruments. The contract was
one relating wholly to her separate estate, in relation to
which. the statute empowers her to contract with the same
freedom and to the same extent as though she were unmarried. The fact that the proceeds of the sale of the note
were to go into her husband's business would not in the
least affect her power to guarantee the payment of the note,
and to bind herself by such guaranty. The third finding
of the court is as follows: "That before the purchase of
said note by the plaintiff, Mary C. Kitchen had given said
note to the defendant A. D. Kitchen, to be used by him in
his business, but that before said purchase said Mary C.
Kitchen signed the guaranty hereinbefore found, and authorized her husband to put said note in circulation with

said guaranty thereon." It is insisted that this finding shows that Mrs. Kitchen had parted with all interest in the note, and had given the same to her husband prior to indorsing the same, and that she is therefore no more liable upon her indorsement than she would be by indorsing the note of her husband or of some third party. This third finding of the court is inconsistent with the admitted facts, and we think it is not to be considered. It is undoubtedly true that Mrs. Kitchen agreed with her husband, prior to a sale of this note to the defendant in error, that he might sell some of her lots and use the proceeds in his business. As before stated, the note in question was taken as part consideration on the sale of some of her lots; and, in the sense that she had agreed with her husband to give him the proceeds of these lots, she had given him this note. The record and her own answer make it plain, however, that she never transferred to her husband the legal title to the note by indorsing the same to him; and her answer admits that she indorsed the note at the request of her husband in order that it might be sold and the proceeds used in his business. We think that she is bound by the allegations of her answer, and that, fairly construed, admits that she indorsed the note in its present form for the sole purpose of negotiating the same and transferring the title.

Our attention has been called to some cases from other states, and particular attention directed to *Russel v. People's Savings Bank,* 39 Mich., 671. It appears from the statement of facts made by Judge Cooley in that case that Mrs. Russell, a married woman, was the owner of a note made to her by the Hamtramck Iron Works. She was also a stockholder in the Detroit Car Works. The latter company was indebted to the People's Savings Bank, which threatened suit for the collection of its claim. To prevent suit, Mrs. Russell indorsed the note given her by the Hamtramck Iron Works, and gave it to the bank as collateral security for the debt due it from the car company. The note not being paid at maturity, the bank brought suit

against Mrs. Russell upon her indorsement. Judgment went against her in the superior court, which was reversed in the supreme court upon the ground that her contract of indorsement was made for the benefit of the bank, and that she could not bind herself as surety for another. The statement of the case shows that she indorsed this note, not for any purpose of her own, but as security for the payment of a debt due the bank from the car company, and the fact that she was a stockholder in the company could not enlarge her liability on the contract. Judge Cooley disposes of such a claim in the following apt words: "But it is said that in this case the suretyship was for the benefit of a corporation in which Mrs. Russell was a stockholder, and therefore she must be supposed to have had in view in making it her own interest in the corporation. Mrs. Russell, however, was not identified with the corporation otherwise than as having an interest in it; the legal identity of each was distinct, and contracts for the benefit of the corporate estate were in no sense contracts for the benefit of the estate of one of its corporators. * * * The test of competency to make the contract is to be found in this: that it does or does not deal with the woman's individual estate; possible incidental benefits can not support it. Tested by this criterion this contract of indorsement, so far as it involves a personal responsibility, must fail. Mrs. Russell has contracted for the advantage, not of her own estate, but of a corporation with which she is no more identified in law than she is with her husband or any third person. * * * But there is no occasion to indulge in presumptions one way or the other; it is sufficient that the contract is one of suretyship merely, and as such is not one the statute empowers a married woman to make." In the case we are now considering, the note was made payable to Mrs. Kitchen. She offered it on the market with her indorsement in the form above set out; and, while the purchaser of negotiable paper takes it with constructive notice of the disability of the maker or the indorser, we do not think he is driven to the inquiry of the use to which

a married woman intends to devote the proceeds of a note payable to her order, and which she indorses to give it currency. Concededly, the law is that she would be liable on this contract of indorsement, had she invested the proceeds of the sale in the improvement of her separate estate or to her own personal use; and we can not bring ourselves to think that because she may invest it in presents made to her friends, or turns it over to her husband to be used by him in his business, that her liability is lessened in the slightest degree. A married woman in this state may engage in trade. Of necessity, she may take notes and bills in the conduct of her business, and having taken them, she may dispose of them like other traders. As a trader, she gives an implied warranty of her title to every article which she sells; and, in case the property is lost to the purchaser because she had no title when she sold to him, there can be no doubt of his right to maintain an action against her on her implied warranty of title. This being so, why can she not make an express warranty of the quality of the goods she offers for sale,—a warranty that is valid and may be enforced against her? If she has not that power, then the statute which gives her leave to engage in trade places her at a disadvantage with other traders, who can make a valid warranty upon which their customers may rely as affording them protection. So, too, in the disposal of the notes and bills taken in the conduct of her business, if she can not sell and dispose of them when the necessities of her business demand ready money, and make an indorsement upon which she may be held liable personally,—if she can indorse, so as to transfer the legal title only,—then she is again at a disadvantage, and may be compelled to dispose of the notes and bills taken in the course of her business at a large discount, to a purchaser who would be willing to pay their full face value, if he could rely upon her indorsement, rather than on the solvency of the maker, who is perhaps unknown to him. These considerations lead us to believe that it was the intent of the legislature to give to a married woman the same rights

as a married man possesses, and to impose on her the same liabilities in all transactions connected with her separate estate or trade or business, and that a person dealing with her in relation to her separate property need make no inquiry as to her intention in the disposition of the proceeds realized by her from a sale made either of notes or bills or of other property held by her in her own right.

We recommend the affirmance of the judgment.

AMES and ALBERT, CC., concur.

By the court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.